UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TERENCE BETHEA, et al.          )
                                )
            V.                  )     Civil Action No. 07-1112 (RMC)
                                )
WILLIAM SMITH, et al.           )

FEDERAL RESPONDENTS' MOTION TO DISMISS CLAIMS AND FOR
OTHER RELIEF, AND OPPOSITION TO MOTION TO BE CERTIFIED AS A
CLASS ACTION

The Federal Bureau of Prisons and the United States Parole Commission ("Federal Respondents") respectfully move to dismiss four of the six sets of petitioners' claims and for other relief as shown below, and oppose the motion to be certified as a class action.

## INTRODUCTION

Petitioners are Terence Kevin Bethea, Thurston Sweet, Alfonso Wilson, Donddeago Hardy, Jeremiah Mack, and Marcus Ferguson.  On May 24, 2007, these six served a Petition for a Writ of Habeas Corpus, later amended on July 9, 2007 (unserved Addendum), challenging their sentence computations (including loss of previously awarded institutional and educational good time credits), and asserting a violation of the Constitution's Ex Post Facto Clause.[1]  They seek class action certification  (petitioners' (unserved) June 21, 2007 Motion To Be Certified As A Class Action). On June 28, 2007, the Court entered an Order requiring the federal respondents to show cause why a writ of habeas corpus should not issue.

_____

[1]        Under the "mailbox" rule, a pro se prisoner's pleadings are deemed "filed" once they are delivered to prison authorities for transmission to the district court.  Houston v. Lack, 487 U.S. 266, 274-76 (1988).  Petitioners' petition lacks any such certification, indicating only that the petition was put in their institution's mailing receptacle on May 24, 2007 to serve the U.S. Attorney's Office.  Nonetheless, for purposes of this brief, we treat May 24, 2007 as the "filing" date, rather than June 21, 2007, the date on which the petition was stamped "filed" in the Clerks' Office.

Four of the six sets of claims cannot be sustained (at least in this district) and should be dismissed.[2]  As to the remaining two petitioners, Wilson and Ferguson, Ferguson should be dismissed without prejudice for misjoinder, while Wilson should be required to file an appropriate amended petition free of any allegations other than those concerning his own claims.  The motion for class action certification should be denied.

ARGUMENT

I.    FOUR OF THE SIX SETS OF CLAIMS SHOULD BE DISMISSED.

Bethea's claims should be dismissed with prejudice because he waived them when he agreed to an expedited parole revocation procedure, Sweet's claims should be dismissed without prejudice because the Court lacks personal jurisdiction over Sweet's custodian, and Mack's and Hardy's claims should be dismissed with prejudice as moot because they were released from custody.

A.    Bethea's Claims Should Be Dismissed Because, When He Accepted The Commission's Expedited Revocation Procedure In June 2007, He Waived His Right To Challenge The Revocation Of His Mandatory Release And The Resulting Re-Calculation Of His Sentence.

Bethea recites (at 2) that in 1995 he was sentenced to three to nine years' incarceration on a conviction for attempted distribution of cocaine.  "When his sentence was calculated by the D.C. Department of Corrections," he states, he "was given 864 good days o[f] 'In[s]titutional Good Time Credit[s]' pursuant to D.C. Code § 24-431(a), and 24-428, of the 'Good Time Credit Act.'" Id.  To date, Bethea represents, he "has had two violations of parole, [for] which . . . his parole was

---

[2]    If the Court determines not to dismiss any of the four sets of claims, the Federal Respondents respectfully request the opportunity to address the merits of any non-dismissed petitioner's claims within 45 days of the entry of the Court's decision.

revoked." [3/] Id. In both revocations, his "sentence was recalculated as if it were a []new sentence without the benefit of previously awarded Institutional and Educational Good Time Credits that had accrued and w[e]re . . . vested by statute." Id. Bethea complains of the "loss of previously awarded good time and street time" (July 9, 2007 Addendum at 3). In attacking his sentence computation, Bethea (Petition at 4-7) challenges the application of D.C. Code § 24-406, which requires forfeiture of the time spent on parole when a D.C. Code offender's parole is revoked, to prisoners paroled after April 1, 1987, and contends (at 9-10) that the U.S. Parole Commission's application of regulations at 28 C.F.R. § 2.20 runs afoul of the Ex Post Facto Clause. [4/] Bethea also complains that these good time credits "could only be forfeited after a hearing pursuant to § 24-432" (Petition at 2).

    1. Background

        a. Bethea's Parole and Mandatory Release Proceedings

Petitioner Bethea was originally sentenced by the Superior Court of the District of Columbia, on June 6, 1995, to a probation violation sentence of 3 to 9 years in prison (Exhibit B-1)(Bureau of Prisons Sentence Monitoring Computation Data). On January 8, 1997, Bethea was paroled by the D. C. Board of Parole (Exhibit B-2) (Certificate of Parole). His certificate of parole required him to remain under supervision until July 18, 2003.

---

    [3/]      As shown below, the D.C. Board of Parole revoked Bethea's parole in 1999. The U.S. Parole Commission revoked Bethea's mandatory release in 2005, and revoked Bethea's mandatory release again earlier this year.

    [4/]      28 C.F.R. § 2.81(a) provides that if the prisoner "is not serving a new parolable D.C. Code sentence," the U.S. Parole Commission's "decision to grant or deny reparole on the parole violation term shall be made by reference to the reparole guidelines at [28 C.F.R.] § 2.21." In turn, § 2.21 refers the Commission to the guidelines at 28 C.F.R. § 2.20.

On September 28, 1998, the D.C. Board of Parole issued a warrant for Bethea's arrest, which was executed on April 19, 1999 (Exhibit B-3 at 2).  On December 13, 1999, the D.C. Board revoked petitioner's parole for criminal and non-criminal violations (Exhibit B-4)(Notice of Board Order).  Under D. C. Code  § 24-406(a),  Bethea was thereafter obliged to serve the balance of his sentence, without credit for time on parole, commencing with his return to custody on April 19, 1999.  However, the D. C. Department of Corrections gave petitioner jail credit for 203 days he had spent in Maryland custody prior to the execution of the Board's warrant on April 19, 1999.  The Department of Corrections calculated petitioner's new full term date to be October 25, 2005 (Exhibit B-5) (Department of Corrections Face Sheet dated April 20, 1999).

Bethea was subsequently transferred to the jurisdiction of the U.S. Parole Commission pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-33, §11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code §24-131 (hereinafter "the Revitalization Act').   On May 31, 2000, petitioner received a reconsideration hearing from the U. S. Parole Commission (Exhibit B-6) (Hearing Summary).  On November 29, 2000, the Commission remanded Bethea's case for a rehearing to consider new evidence received from the Maryland prosecutor (Exhibit B-7) (Notice of Action).

On May 5, 2001, the Commission issued a Notice of Action continuing Bethea to the expiration of his sentence (Exhibit B-8).  The Commission rated petitioner's parole violation behavior as Category Six severity pursuant to its guidelines at 28 C.F.R. § 2.20, because the behavior ". . . involved [r]obbery with the victim being detained by being tied up."  Id.

On November 2002, petitioner was mandatorily released from FCI Allenwood, Pennsylvania,

to remain under supervision until his full term date of April 4, 2005 (Exhibit B-9).[5]  Although

petitioner's certificate of mandatory release listed April 4, 2005, as petitioner's full term date, it

inconsistently stated that petitioner had been released on November 22, 2002, with a total of only

499 days remaining to be served on his sentence.  According to the March 2, 2005 declaration of

Ronald W. Riker, a senior operations specialist employed by the Bureau of Prisons, the figure of 499

days was a clerical error, while the full-term date of April 4, 2005, was the correct full-term date

resulting from the revocation of petitioner's parole in 1999 by the D. C. Board of Parole, and the

consequent forfeiture of time spent on parole pursuant to D. C. Code § 24-406(a) (Exhibit B-10).

Bethea thereafter submitted to mandatory release supervision, but on September 20, 2004,

the Commission issued a warrant for petitioner's arrest (Exhibit B-11).  This warrant correctly stated

that petitioner had been released on mandatory release from FCI Allenwood on November 22, 2002,

with 864 days remaining to be served.  Id.  The violation charges listed on the warrant application

were:  (1) failure to submit to drug testing, (2) multiple usage of cocaine, and (3) theft of

merchandise from a Home Depot store in Washington, D. C., and failure to appear in court on this

charge (Exhibit B-12).  The Commission's warrant was executed on January 5, 2005, and petitioner

was committed to the D. C. Jail (Exhibit B-13 at 2).  On January 14, 2005, the Commission added

a further parole violation charge of breaking and entering, burglary, robbery, and assault (Exhibit

B-14).

On March 2, 2005, a Commission hearing examiner conducted petitioner's revocation

hearing (Exhibit B-15).  Bethea challenged the full term date of his sentence as calculated by the

---

[5]       A prisoner is mandatorily released, rather than paroled, at the expiration of his or her
sentence minus deductions for any good time credits accrued while incarcerated.  See 28 C.F.R. §
2.87(a).

Bureau of Prisons.  On March 21, 2005, the Commission issued its decision to revoke mandatory release, forfeit all of the time petitioner spent on mandatory release, and to grant reparole on August 17, 2005 after the service of 10 months (Exhibit B-16).  On appeal of the Commission's decision, the National Appeals Board corrected the error in the calculation of petitioner's reparole date to July 29, 2005 (Exhibit B-17).

Bethea was released to parole supervision on July 29, 2005 (Exhibit B-18).  At the time of his release, the sentence expiration date, due to loss of credit for time he had spent on mandatory release, was November 29, 2007.  Bethea failed to comply with the conditions of parole and, on February 28, 2007, the Commission issued a warrant for his arrest (Exhibit B-19).  The Commission charged Bethea with failing to report a change in his residence to his supervision officer, violating the law by committing the offense of "uttering," and failing to report his arrest to his supervision officer (Exhibit B-20).  The U.S. Marshal arrested petitioner on the warrant on May 14, 2007 (Exhibit B-21).  On May 14, 2007, the Commission added the information that Bethea had been convicted of attempted uttering and sentenced to 40 days imprisonment on the charges listed on the warrant (Exhibit B-22 at 3).

On June 1, 2007, a Commission hearing examiner conducted petitioner's probable cause hearing (Exhibit B-23).  Petitioner admitted that he had changed residence without notifying his supervision officer and that he had been convicted of attempted uttering; however, he disputed the Bureau of Prisons computation of his sentence.  Id. at 5.  On that same date, June 1, 2007, Bethea, with the assistance of counsel, signed a document indicating that he was willing to accept revocation of his parole, forfeit of all of the time spent on parole, and receive a reparole date at the bottom of

the reparole guideline range (Exhibit B-24).[6]

On June 12, 2007, a Commission hearing examiner reviewed Bethea's case and established a reparole guideline range of 18-24 months based upon the violations (Exhibit B-25). On June 22, 2007, the Commission issued its decision to revoke petitioner's parole, forfeit all of the time spent on parole, and continue him to expiration (Exhibit B-26). Under the U.S. Parole Commission's estimation, petitioner will serve approximately 12 months until his sentence expires. Id.

b. Bethea's Habeas Litigation

In 2000, Bethea filed a petition for a writ of habeas corpus shortly after his parole was revoked in December 1999, in which he challenged the Department of Corrections' failure to credit him for time spent on parole as a violation of the due process and the Ex Post Facto Clauses. See Civil Action No. 00-1431 (D.D.C.). On April 4, 2002 the Honorable John D. Bates denied the petition (Attachment "1" hereto). Judge Bates held that in light of the decision in Davis v. Moore, 772 A.2d 204 (D.C. 2001) (en banc), "the retroactive application" of the holding in U.S. Parole Commission v. Noble, 711 A.2d 85 (D.C. 1998) (en banc) "d[id] not violate Bethea's rights" under these clauses (Attachment "1" at 3). The judge also noted a supplemental argument in which Bethea alleged that the Commission had violated the Ex Post Facto Clause in applying "new regulations that are more onerous to his future parole determination" (id. at 2). Judge Bates held, at 2, that "to the extent ... [Bethea's] argument . . . is based upon the allegation that the District of Columbia Board of Parole regulations mandate parole after successful completion of a set-off, it is simply wrong" (citing Blair-Bey v. Quick, 151 F.3d 1036, 1042 (D.C. Cir. 1998) (D.C. Municipal Regulations did

---

[6]     Under the "expedited revocation procedure," the parolee agrees to the revocation of his parole, without a hearing, and further agrees to a disposition concerning the appropriate prison term for the violation. See 28 C.F.R. § 2.66.

not create liberty interest in right to one year set-off)).

In 2001, Bethea filed a petition for a writ of habeas corpus challenging the March 2001 decision of the U.S. Parole Commission denying him reparole and scheduling him for another parole hearing in twenty-four months (Civil Action No. 01-0571) (M.D. Pa. 2002). He claimed, inter alia, that the Commission had violated the Ex Post Facto Clause by using its own reparole guidelines rather than the D.C. Board of Parole's guidelines. On February 19, 2002, the Honorable William W. Caldwell, U.S. District Judge for the Middle District of Pennsylvania, denied Bethea's petition (Attachment "2" hereto). Judge Caldwell held that the Commission's application of its parole guidelines did not violate the Ex Post Facto Clause, and that Bethea had not even attempted to show that application of these guidelines had increased his risk of punishment (id. at 13-17).

Finally, on November 30, 2005, the Honorable Ricardo M. Urbina denied yet another habeas petition filed by Bethea, Bethea v. Bureau of Prisons, 2005 WL 34195, *4 (Nov. 30, 2005), Civil No. 04-2269 (D.D.C.) (Attachment "3" hereto). This arose out of the Commission's March 21, 2005 decision to revoke Bethea's mandatory release. Judge Urbina held that good time credits are applied to the minimum term of the sentence to reduce the time of eligibility for parole and to the maximum term to determine the mandatory release date, but that good time credits do not carry over (into a new sentence). 2005 WL 3244195, *4. The judge also determined that D.C. law requires the rescission of credit for time spent on parole when parole is revoked (D.C. Code § 24-406(a)). Id. Petitioner appealed the decision to the D.C. Circuit, which dismissed the appeal for Bethea's failure to prosecute (Attachment "4").

2.  Discussion

By accepting the Commission's expedited revocation procedure, supra pp.6-7, Bethea is now in the position of a litigant who challenges agency action after having consented to the agency taking that action, through a voluntary waiver of his right to a revocation hearing at which he could have contested it.[7/] In short, Bethea has waived his present claims by agreeing to the revocation of his parole, the forfeiture of his time spent on parole, and the imposition of a parole revocation term no greater than the bottom of his guidelines range. See, e.g., Duckett v. Quick, 282 F.3d 844, 847-48 (D.C. Cir. 2002) (argument that due process was violated because parolee was denied right to cross-exam witnesses in parole revocation hearing failed because parolee waived right to cross-exam witnesses); Horner v. U.S. Parole Commission, 870 F.2d 1489, 1493-94 (9th Cir. 1989) (parole violator's insistence on going forward at hearing without counsel waived claim to attorney at hearing); Ogburn v. U.S. Parole Comm'n, 2006 WL 1933363, *2 (W.D.Va. 2006) (petitioner's claim "rendered moot by his acceptance of the expedited revocation proposal"; "[b]ecause [petitioner] . . . waived his right to a revocation hearing and chose to consent to revocation on the record, . . . [the] relief [he seeks] is no longer necessary," and his "petition must be dismissed as moot") .[8/]

---

[7/]    See Morrissey v. Brewer, 408 U.S. 471, 488 (1972)(a parole revocation hearing is the parolee's "...opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation").

[8/]    In addition, Bethea's petition arguably should be dismissed as a successive habeas petition or an abuse of the writ. E.g., McCleskey v. Zant, 499 U.S. 467, 489 (1991) (petitioner cannot bring claims in a second or subsequent habeas petition which he asserted, or could have asserted, in the prior petition). Bethea again claims, for example, that the Commission was without authority to forfeit his earned good time credits. Petitioner again claims that the Commission's application of its regulations violates the Ex Post Facto Clause. All his claims should be barred because they were raised, or could have been raised, in at least one previous petition for writ of habeas corpus that resulted in a decision on the merits (Attachments "A" & "B"). McCleskey, 499

B.    Sweet's Claims Should Be Dismissed Without Prejudice for Lack of
      Personal Jurisdiction over His Custodian

Courts considering a habeas petition must have personal jurisdiction over the "person having custody of the person detained." 28 U.S.C. § 2243.  See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) (prisoner's custodian is the only proper respondent in a habeas matter); Glascoe v. U.S. Parole Comm'n, 2004 WL 2857284, *1 (D.C. Cir. Dec. 13, 2004) (court lacking jurisdiction over petitioner's custodian not proper forum for habeas petition).  On June May 24, 2007, petitioner Sweet was not incarcerated in the District of Columbia, having been released to the U.S. Marshal's Service for transport on May 7, 2007 (Attachment "5").  Sweet now resides at  FCI Fairton (New Jersey) Correctional Institution (Attachment "6").[9]  Accordingly, the Court should dismiss Sweet's claims without prejudice, with leave to refile an individual petition in the U.S. District Court for the District of New Jersey, where Sweet's custodian resides.  See Stokes v. U.S. Parole Comm'n, 374 F.3d 1235, 1239 (D.C. Cir. 2004) (warden of correctional facility where petitioner resides is custodian for purposes of habeas jurisdiction); Chatman-Bey v. Thornburgh, 864 F.2d 804, 810 (D.C. Cir. 1988) ("well settled that the appropriate respondent in a habeas action is the custodian of the prisoner"); In re Tripati, 836 F.2d 1406, 1407 (D.C. Cir. 1988) ("habeas petition may be

U.S. at 489; In re Fashina, 486 F.3d 1300, 1302 (D.C. Cir. 2007) (citing McCleskey); United States v. Palmer, 296 F.3d 1135, 1144 n.10 (D.C. Cir. 2002) (writ abuser may be allowed to proceed only if he shows "cause" for his failure to raise the claim earlier and "actual prejudice" resulting from the errors of which he complains); Davis v. Fechtel, 150 F.3d 486 (5th Cir. 1998); George v. Perrill, 62 F.3d 333 (10th Cir. 1995); Glumb v. Hunsted, 891 F.2d 872, 873 n.1 (11th Cir. 1990) ("the underlying issues are identical and the present petition merely involves an attack on the same issues adjudicated in the prior proceeding").

[9]    The "FAI" on the topmost entry for May 7, 2007 on Attachment 6 refers to FCI Fairton (New Jersey) Correctional Institution. See also http://www.bop.gov/iloc2/LocateInmate.jsp (entry for Thurston Sweet reflecting his incarceration at FCI Fairton).

adjudicated only in the district in which [petitioner's] immediate custodian, his warden, is located"); Guerra v. Meese, 786 F.2d 414, 415 (D.C. Cir. 1986) (§ 2241 requires personal jurisdiction over custodian); cf. Outlaw v. Hawk-Sawyer, 321 F. Supp.2d 96, 98 (D.D.C. 2004) (ordering transfer of single-petitioner habeas case).[10/]

Finally, the Court should first notify Sweet of its intention to dismiss his petition for lack of personal jurisdiction over his custodian, with leave to refile in the jurisdiction in which he resides, the U.S. District Court for the District of New Jersey. Cf. Chatman-Bey, 864 F. 2d at 814 (authorizing district courts to "transfer [habeas] cases sua sponte, after the habeas petitioner has been afforded notice and an opportunity to respond").

C.    Mack's and Hardy's Claims Should Be Dismissed as Moot Because
      They Were Released from Custody.

The petition contends that the Commission should have applied the Board's reparole policy and practice in making its reparole decision and that, had the Commission done so, petitioners would have been granted reparole. Mack, however, was released on reparole on May 4, 2007 (Attachment 7). Hardy was released on reparole on March 3, 2006 (Attachment 8), and was evidently not in custody on May 24, 2007, the date on which the petition was filed (Attachment 9) (see Booking History, p.2). Accordingly, their habeas claims should be dismissed as moot.[11/]

Under Article III of the U.S. Constitution, a federal court has the power to resolve only "Cases" or "Controversies" between litigants. Isenbarger v. Farmer, 463 F.Supp. 2d 13, 19 (D.D.C.

---

[10/]     Ordinarily, in a single-petitioner habeas case, transfer of the case would be indicated, as the cited authorities show. Here, however, petitioner Sweet's claims are contained in a multi-petitioner petition that cannot itself be transferred feasibly. Accordingly, dismissal without prejudice with leave to refile in Sweet's home forum seems the apt alternative.

[11/]     See footnote 14, infra (concerning Hardy's subsequent rearrests).

11

2006).  As the Court recounted in <u>Isenbarger</u>:

> A case is considered moot either "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  <u>Powell v. McCormack</u>, 395 U.S. 486, 496 . . . (1969); <u>see also</u> <u>Pharmachemie B.V. v. Barr Labs</u>., 276 F.3d 627, 631 (D.C. Cir. 2002) (case is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future").  As the Supreme Court has put it "mootness deprives us of the power to act; there is nothing for us to remedy, even if we were disposed to do so."  <u>Spencer v. Kemna</u>, 523 U.S. 1, 18  . . . (1998).

463 F.Supp.2d at 22.  Indeed, counsel have a duty to advise the Court "without delay" of facts that raise the possibility that a case has become moot.  <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 68, n.23 (1997).

Mack and Hardy demand that the Commission grant them a new reparole hearing using a decision-making policy that, in their view, comports with the Ex Post Facto Clause.  With their release, however, an order directed to the federal respondents that Mack and Hardy be granted a new reparole hearing or record review would not affect their present status.[12]  Indeed, it is well settled that a habeas petition challenging parole release or revocation procedures becomes moot when a petitioner is released from custody on parole unless there are actual adverse consequences caused by the Commission's finding.  <u>See</u> <u>Phifer v. Clark</u>, 115 F.3d 496, 500 (7th Cir. 1997) (to overcome mootness, petitioner must demonstrate non-speculative adverse consequences stemming from Commission action); <u>cf</u>. <u>Spencer v. Kemna</u>, 523 U.S. 1, 14 (1998) (petitioner required to demonstrate actual adverse collateral consequences to overcome mootness when he had completed

---

[12]    The typical relief ordered by a reviewing court in cases challenging parole actions is the issuance of a conditional writ of habeas corpus, <u>i.e.</u>, the court orders the Commission to correct its error within a period of time, and if the Commission fails to do so, discharges the prisoner from custody. <u>See</u>, <u>e.g.</u>, <u>Billiteri v. U.S. Board of Parole</u>, 541 F.2d 938, 944 (2d Cir. 1976).

parole revocation sentence).[13]

Because these petitioners' ultimate objective in bringing their habeas action was to obtain reparole, the Commission's granting of reparole to Mack and Hardy provided the relief they seek. Accordingly, their claims are moot. Qassim v. Bush, 466 F.3d 1073, 1076 (D.C. Cir. 2006) (release mooted habeas claim challenging detention at Guantanamo Bay Naval facility); Abdussamadi v. Harris, 2003 WL 880993, *1 (D.C. Cir. 2003) (release on reparole mooted petition for writ of mandamus challenging Commission's parole eligibility date); In Re Smith, 114 F.3d 1247, 1249 (D.C. Cir. 1997) ("request for habeas corpus relief is moot as a result of [petitioner's] release from prison"); Alonso-Martinez v. Meissner, 697 F.2d 1160, 1165-66 (D.C. Cir. 1983) (release from INS detention to parole mooted habeas petition); see also Fendler v. U.S. Bureau of Prisons, 846 F.2d 550, 555 (9th Cir. 1987) (petition challenging parole date by seeking restoration of good-time credits mooted by release on parole); Cox v. McCarthy, 829 F.2d 800, 803 (9th Cir. 1987) (Ex Post Facto challenge to new law imposing additional periods of incarceration for parole violators moot upon release from prison).[14]

---

[13]    The collateral consequence can not be speculative and can not be contingent on the petitioner violating the conditions of his parole.  See Spencer v. Kemna, supra, 523 U.S. at 15 (rejecting a suggested collateral consequence that "was contingent upon . . . violating the law, getting caught, and being convicted"); Phifer v. Clark, supra, 115 F.3d at 500 ("[a] habeas petition can play no role in sheltering someone from his or her own possible future misconduct."); Reimers v. State of Oregon, 846 F.2d 561, 563 (9th Cir. 1988) (mootness exception not applicable where the possibility of re-occurrence depends on the petitioner's own wrongdoing); Cox v. McCarthy, 829 F.2d 800, 804 n.3 (9th Cir. 1987) (same).

[14]    That Hardy was rearrested on November 16, 2006 and released on April 19, 2007; rearrested on August 1, 2007 and released  on August 9, 2007; and then rearrested on September 5, 2007 on a new parole violator warrant (Attachment "9") does not change the analysis as to him. Hardy was evidently not in custody on the date the May 24, 2007 petition was filed, so that his challenge to the reparole procedures used by the Commission, on that date, was mooted by his release.  Whether Hardy may have a claim against the Commission or the Bureau of Prisons in the

II.    THE MOTION FOR CLASS ACTION CERTIFICATION SHOULD BE DENIED,
       AND THE REMAINING TWO PETITIONERS (WILSON AND FERGUSON)
       <u>ALLOWED TO PURSUE ANY APPROPRIATE INDIVIDUAL PETITIONS.</u>

A litigant seeking class certification must justify the use of a litigation device that is "an exception to the usual rule that litigation is conducted by and on behalf of the individual parties only." <u>General Telephone Co. of Southwest v. Falcon</u>, 457 U.S. 147, 155 (1982) (quoting <u>California v. Yamasaki</u>, 442 U.S. 682, 700 (1979)).  Plaintiffs must establish that a class action would "advance 'the efficiency and economy of litigation which is a principal purpose of the procedure.'" <u>Falcon</u>, 457 U.S. at 159 (quoting <u>American Pipe & Constr. Co. v. Utah</u>, 414 U.S. 538, 553 (1974)).  The Court is to undertake a "rigorous analysis" of whether Rule 23(a) of the Federal Rules of Civil Procedure has been satisfied, because "actual, not presumed, conformance with Rule 23(a) [is] . . . indispensable." <u>See Falcon</u>, 457 U.S. at 160-61.[15/]

In this case, petitioners have failed to meet the numerosity and commonality requirements of Rule 23(a), which requires that persons alleged to constitute the class be "so numerous as to make it impracticable to bring them all before the Court," and that "there are questions of law or fact

_____

future is another matter neither known nor ripe for review.

[15/]    Although certain courts of appeal have stated that Rule 23 does not technically apply to habeas actions, habeas petitioners have been allowed to proceed in an analogous representative proceeding where the number of petitioners was large, they raised the identical legal issue in their petitions, and there was no genuine issues of fact that differentiated the petitioners' allegations. <u>See, e.g., Bijeo v. Benson</u>, 513 F.2d 965, 968 (7th Cir. 1975) (citing <u>Sero v. Preiser</u>, 506 F.2d 1115, 1125-26 (2d Cir. 1974)); <u>but see Morris v. Thomas</u>, 2007 WL 2683832 (C.D. Ill. Sept. 6, 2007) (although representative habeas actions, analogous to class actions, were possible in the past under limited circumstances, the Antiterrorism and Effective Death Penalty Act now prohibits successive habeas proceedings without prior permission from the court of appeals; thus, the court "cannot hear an action, representative or otherwise, on behalf of anyone in the proposed class who has already filed a federal habeas petition without prior approval from the court of appeals") (denying motion for class action certification).

common to the class."  Those seeking to maintain an action as a class action have the burden of showing that it would be impracticable for the court to deny their request for class action status.  See Valentino v. U.S. Postal Service, 16 Fair Empl. Pract. Cases 242 (D.D.C. 1977) (if the plaintiff cannot meet requirements of Rule 23, then she must pursue an individual claim); Rossin v. Southern Union Gas Co., 472 F.2d 707, 712 (10th Cir. 1973) ("a class action does not exist merely because it is so designated in the pleadings."); Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968).

Moreover, Ex Post Facto analysis is not appropriate for class action treatment because the proof which will be required for the Court to conduct a proper analysis of the issue must be "susceptible of proof equally applicable to all class members." Rodriguez v. U.S. Dept. of Treasury, 131 F.R.D. 1, 8 (D.D.C. 1990); Boughton v. Cotter Corp., 65 F.3d 823, 828 (10th Cir. 1995) (trial court may properly deny class certification where "individual issues predominated over common issues"); Zimmerman v. Bell, 800 F.2d 386, 390 (4th Cir. 1986) (trial court did not abuse discretion in denying certification where relief would require "individualized determinations" of shareholder reliance on alleged corporate misrepresentations). The inquiry that would be involved in reviewing petitioners' Ex Post Facto claims is both individualized and fact-based.  See Garner v. Jones, 529 U.S. 244, 250, 255 (2000) (where the rule does not by its own terms show a significant risk, the prisoner must demonstrate that, as applied to his own sentence, the law created a significant risk of increasing his punishment); Fletcher v. Reilly, 433 F.3d 867, 878 (D.C. Cir. 2006) (remanding case to district court for comparison between the two parole regimes and effect of the change in regimes on petitioner);[16] Michael v. Ghee, 2007 WL 2287743, *11 (6th Cir. Aug. 10, 2007) (disparity among

---

[16]    Under Fletcher, given a sufficient pleading, this Court would be obliged to carry out an individualized fact-based comparison between the U.S. Parole Commission's and the D.C. Board's exercise of discretion under their corresponding regulations, and the practical effect of the

prisoners alleging Ex Post Facto violation "precludes a uniform analysis of their ex post facto claims"); Richardson v. Pennsylvania Board of Probation and Parole, 423 F.3d 282, 284 (3d. Cir. 2005) (petitioner must show individual disadvantage by the rule change).  Therefore, the remaining petitioners, Wilson and Ferguson, should be denied class certification.

Concomitantly, Wilson and Ferguson should be separated as party plaintiffs too, for misjoinder of claims.  See, e.g., Asaberg v. AcandS Inc., 152 F.R.D. 498 (D. Md. 1994) (dropping all but first-named plaintiff from suit setting forth skeleton claim of exposure to asbestos on behalf of 1,000 plaintiffs because suit did not satisfy "same transaction or occurrence" test for permissive joinder) (citing Rules 20 & 21, Fed. R. Civ. P.); Randleel v. Pizza Hut of America, Inc., 182 F.R.D. 542 (D. Ill. 1998) (two groups of African-American restaurant patrons claiming discrimination against restaurant chain based on alleged denial of service could not be permissibly joined as party plaintiffs; claims based on factually discrete and unrelated incidents); Vinson v. Barkley, 646 F. Supp. 39, 40 (W.D.N.Y. 1986) (that individual was denied parole in separate proceeding, allegedly in violation of due process, did not pose question of law or fact common to those presented in plaintiff prisoner's civil-rights action alleging due-process violation resulting from parole revocation; permissive joinder not warranted).

In short, the Court should require Wilson to file an appropriate amended petition stripped

---

change in regulations on each petitioner's incarceration.  Fletcher, 433 F.3d at 877 ("district court must assess the magnitude of the risk in terms of the practical effect of the change in regulations on the length of a petitioner's incarceration").  Any amended complaint filed here should show how the change in regulations, "as applied to [petitioner's] sentence," has "created a significant risk of increasing [his] punishment."  Garner v. Jones, 529 U.S. 244, 250 (2000).  To establish an Ex Post Facto violation, one must provide evidence that he faces a significant risk of increased punishment because of the change in the laws and must establish the effect of the changes on him.  See Richardson v. Pennsylvania Board of Probation and Parole, 423 F.3d 282, 291 (3d Cir. 2005).

of class allegations, limited to his own claims, and should dismiss Ferguson's claims, with leave to file an appropriate petition of his own, under a new civil action number.

<u>CONCLUSION</u>

WHEREFORE, the Federal Respondents submit that Bethea's, Mack's and Hardy's claims should be dismissed with prejudice; Sweet's claims should be dismissed without prejudice to refiling in his district of incarceration; Wilson should be required to file an appropriate amended petition stripped of class allegations and limited to his own claims; Ferguson should be dismissed without prejudice to refiling an appropriate petition under a new civil action number, stripped of class allegations and limited to his own claims; and the motion for class action certification should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR (D.C. Bar 490-610)
United States Attorney

ROBERT D. OKUN (D.C. Bar No. 457-078)
Chief, Special Proceedings Division

 /s/ Thomas S. Rees
THOMAS S. REES (D.C. Bar No. 358-962)
Assistant United States Attorney
Special Proceedings Division
555 Fourth Street, N.W., Tenth Floor
Washington, D.C. 20530
(202) 305-4882

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 19th day of September, 2007, a copy of the foregoing

Federal Respondents' Opposition was served first class mail, postage prepaid, on:

Terence Bethea
Fed. Reg. 09978-007
Gilmer Federal
Correctional Institution
P.O. Box 6000
Glenville, WV 26351

Thurston Sweet
Fed. Reg. 03265-000
FCI Fairton
Federal Correctional Institution
P.O. Box 420
Fairton, NJ 08320

Alfonzo Wilson
Fed. Reg.12015-058
CI Rivers
Correctional Institution
P.O. Box 630
Winton, NC 27986

Donddeago Hardy
DCDC 229-609
Fed. Reg 52725-019
Central Detention Facility
Inmate Mail/Parcels
1901 D Street, S.E.
Washington, D.C.

Jeremiah Mack
12205 Kingsford Court
Mitchellville, MD 20712

Marcus Ferguson

18

Fed. Reg. 10578-007
Petersburg Federal
Correctional Institution
Medium
P.O. Box 90043
Petersburg, VA 23804

and served via the Court's electronic filing system the same date on:

Phillip A. Lattimore, III
Assistant Attorney General,
District of Columbia
441 4th Street, N.W.
Suite 6S065
Washington, D.C. 20001

/s/ Thomas S. Rees
THOMAS S. REES
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TERENCE BETHEA, et al.          )
                                )
            V.                  )              Civil Action No. 07-1112 (RMC)
                                )
WILLIAM SMITH, et al.           )
                                      ORDER

        Upon consideration of the Federal Respondents' motion for leave to file out of time, and the

entire record herein, it is hereby

        ORDERED that the Federal Respondents' motion for leave to file out of time is hereby

GRANTED.  And it is further

        ORDERED that the lodged Federal Respondents' Motion To Dismiss Claims And For Other

Relief, And Opposition To Motion To Be Certified As A Class Action shall be filed.


        SO ORDERED this _____day of _____, 2007.



                                        _____
                                        Honorable Rosemary Collyer
                                        United States District Judge


cc:     Phillip A. Lattimore, III
        Assistant Attorney General,
        District of Columbia
        441 4th Street, N.W.
        Suite 6S065
        Washington, D.C. 20001

        AUSA Thomas Rees
        United States Attorney's Office, RM 10-911
        555 4th Street, N.W.
        Washington, D.C. 20530

Terence Bethea
Fed. Reg. 09978-007
Gilmer Federal
Correctional Institution
P.O. Box 6000
Glenville, WV 26351

Thurston Sweet
Fed. Reg. 03265-000
FCI Fairton
Federal Correctional Institution
P.O. Box 420
Fairton, NJ 08320

Alfonzo Wilson
Fed. Reg.12015-058
CI Rivers
Correctional Institution
P.O. Box 630
Winton, NC 27986

Donddeago Hardy
DCDC 229-609
Fed. Reg 52725-019
Central Detention Facility
Inmate Mail/Parcels
1901 D Street, S.E.
Washington, D.C.

Jeremiah Mack
12205 Kingsford Court
Mitchellville, MD 20712

Marcus Ferguson
Fed. Reg. 10578-007
Petersburg Federal
Correctional Institution
Medium
P.O. Box 90043
Petersburg, VA 23804