UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Terence K. Bethea, et al.,          *

    Petitioners,                    *

v.                                  *        Civil Action No. 07-1112(RMC)

William Smith, et al.,              *

    Respondents.                    *

                                  *

PETITIONER'S MOTION IN OPPOSITION
TO THE GOVERNMENT'S MOTION TO DISMISS

**RECEIVED**
OCT 3 - 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

    Comes now the class members Terence K. Bethea, et al., in the above-captioned cause humbly and respectfully requests this most Honorable Court Deny the government's motion to dismiss this class action and surrounding motion's for the following reasons expressed herein:

### OPPOSITION TO THE GOVERNMENT'S ARGUMENT

    Petitioners state that the goverment's diversionary tactics are irrelavent to the 4 questions presented to this most Honorable Court, However for arguendo purposes petitioners will address each issue briefly. This is because it is a well known fact that the most effective lawyers, are those who keep the fighting away from the issues, petitioners are not lawyers, but are aware of this tactic.

    Petitioners state that the government devotes 2 (two) paragraphs to its argument on page #6, and page #7, stating that class member Bethea waived his right by accepting the D.C. Advanced Consent to Expedited Revocation. While this is true that Bethea did in fact sign the form for an expedited revocation at the bottom of the guidelines, when petitioner received his Notice of Action (NOA) from the U.S. Parole Commission (USPC), he immediately filed an appeal, of which the government conveniently forgot to mention.

-1-

The D.C. advanced consent to the expedited revocation decision, bottom of guidelines, is a relatively new procedure used by the USPC. It is basically a plea offer which if approved by the USPC, locks the parolee's set-off at the "bottom of the guidelines". It also foregos the need for a revocation hearing and thus, is supposed to save time and money in the process.

The USPC makes an offer of an advanced consent to a expedited parole revocation at the preliminary hearing (see CFR § 2.48). At the hearing, pursuant to § 2,48(c), Review of the Charges, the hearing officer (Mr.Hayworth) Shall 1/review the violation(s) charges with the parolee. Id. However, in petitioner's case, the rules changed after Bethea signed the form and the examiner went back to the USPC, behind closed doors.

The USPC did a 360° turn and applied a higher severity guideline based on incorrect data, when it stated, "Subject was convicted for the offense of Uttering." Id. at page #1, of NOA dated June 22, 2007. Petitioner was **NOT** convicted of the offense of Uttering. (which is a Felony), In fact, petitioner was not even indicted for the charge of Uttering.

Moreover, petitioner was not even charged by the USPC in its list of violations charged. The NOA confirms this to be true by reference to petitioner's NOA dated June 22, 2007, which states;

"Charge No. 2 - Law Violation - Attempted Uttering-Conviction."

Petitioner was in fact charged with "Attempt Uttering", of which is a misdemeanor, and is what petitioner pled guilty to.

---

Shall 1/"A term which creates a duty, not an option." In Re O.M., 565 A.2d 573, 582 (D.C. App. 1989), Cert. denied 110 S.Ct 1824(1990)

Moreover, petitioner only pled guilty to what he was exposed to which was simply a misdemeanor. Furthermore, peursuant to the USPC's own rules and regulations related to the D.C. Advanced Consent, it clearly states on the reverse side of the advanced consent form that, "the alledged violation can only be a "catagory one or two offense."

However, the USPC stated in its statement of reasons on page #2 of petitioner's NOA, "Your parole violation has been rated as a catagory three severity," however, petitioner only agreed to the advanced consent to the expedited revocation decision based on the catagory 1 offense of attempted uttering, **NOT** the felony Uttering charge as the government contends. Petitioner relies on <u>Teachey v. Carver</u>, 736 A.2d 998 (D.C. App. 1999),which held; "The Revitalization Act" further provides that the USPC **Shall 1/** . . .excercise the authority vested in it by this section (§ 24-1231(c)), **pursuant to the parole laws and regulations of the District of Columbia."** Id. 1006. The USPC was not, as the Court in <u>Teachey</u> stated; [authorized] to change D.C.Code. However, "regulations may, of course, be repealed or amended, and new rules and regulations may be adopted but such changes must be effected in conformity with prescribed statutory procedures. See e.g., District of Columbia Administrative Procedure Act." (DCAPA), D.C. Code §§ 1-1501 <u>et</u> seq. (1999):

The D.C. Advanced Concent to an Expedited Revocation form clearly states that by accepting, and approving the offer to a expedited revocation (without a hearing of course) the USPC is "locked in at the bottom of the guidelines." Id. at exhibit #1.

-3-

Furthermore, because Bethea signed the Advanced consent under the premise that was based on a catagory 1 offense,(this was told to him by his attorney and the hearing examiner) with a salient factor score of 4, he should have received no more than an 8 month set-off as directed on the back of the D.C. Advanced Consent form, that petitioner signed on June 1, 2007. The USPC played dirty so to speak, and they changed the rules in the middle of the game for a lack of better words. However, this is not a game, on the contrary, this is someone's life and liberty at stake.

Had Bethea not taken the Advanced Consent offer the USPC could not have given petitioner no more than what he received which was 12 months, but at least he would have retained his rights under the prongs of Morrisey v. Brewer, 408 U.S. 471 (1972).

Your Honor, the government conveniently failed to inform this most Honorable Court of the aforementioned facts, and they failed to provide this most Honorable Court with a complete copy of Bethea's front of the advanced consent form. To date petitioner has not received a decision on his appeal, and it has been longer than the the sixty day limit the regulations provide pursuant to CFR § 2.26, of which the government failed to inform the court as well. In any event the aforementioned issue has nothing to do with the questions that the class members has presented to the court for interpretation.

On page 7 and 8 of the government's opposition motion, they seem to convey to the Court that petitioner has had prior litigation However, those cases delt with pre-Fletcher arguments (e.g. Fletcher v. Reilly, 433 F.3d 867 (D.C. Cir. 2006).

-4-

In the pre-Fletcher era, the court's in several other circuits, as well as, the District of Columbia have all held; that, "the federal regulations were not laws that fell under the Ex Post Facto Prohibition."

The D.C. Circuit now holds; "The USPC's new federal regulations . . .violate the ex Post facto Clause of the U.S. Constitution." (See Fletcher,Supra) What's even more compelling is the fact that the circumstances and time frame of what happened to Fletcher, are almost identical to Bethea as well as other class members. Thus, the class members argument with respect to the question asked of this most Honorable Court can and must be addressed, simply because its happened to so many others.

The government states on page 8 of their opposition motion, that the Honorable Judge Ricardo Urbina "denied yet another habeas petition filed by Bethea." Id. at Gov.'s Opp., pg.#8.

With all due respect to the Honorable Judge Urbina, petitioner was informed by his parole attorney that he would not be given law by Judge Urbina, which turned out to be true. This is true simply because the Judge did not address but ONE! issue which was that the BOP made a mistake and placed the wrong date on Bethea's parole certificate. With that said, the Judge failed to rule by misapprehending or overlooking the fact that petitioner was being persecuted on a charge that was vacated, dismissed, and "EXPUNGED" from the record, and according to the Fourth Circuit (the BOP and USPC) "created a Liberty Interest".

-5-

See, U.S. v. Bagheri, 999 F.2d 80 (4th Cir. 1993), which held; "Maryland's expungement statute evidenced intent to prevent consideration of expunged record by parties other than the state of Maryland and **arguably creates a liberty interest.**" Id. at 81. The U.S. Supreme Court's veiw on the matter of an expunged offense was stated or held in, Lewis v. United States, 445 U.S.55 (1980), "a individual's rights are restored if conviction is vacated or felon is relieved of his disability (order of expungement) by some affirmative action." Id. See also Dickerson v. New Banner Inst. Inc., 460 U.S. 103 (1983), which held; "a conviction vacated or reversed . . .would operate to relieve disability. Id. at 992, 993. The D.C. Circuit held; "The [FBI] (or any other governmental agency)"**MUST** expunge information fromits criminal files when the local agency (Maryland's Courts) which first reported information . . .disputing the accuracy of the relevant . . .records. Id. at Tarlton v. Saxbe, 507 F,2d 1116, pg.#1117.

Bethea also contested the use of the preponderance of the evidence standard . . by the USPC in making parole determinations of which he relied on the U.S. Supreme Court's rulings in Apprendi v. New Jersey, Blakely v. Washington, and Booker/Fan-Fan, The Honorable Judge Urbina clearly overlooked or misapprehended the aforementioned issue(s) as well. Thus, for the government to imply that Bethea is simply filing for the sake of filing or in other words litigious, is misleading to say the least. The government also states "Petitioner appealed the decision (of Judge Urbina) to the D.C. Circuit, which dismissed the appeal for Bethea's failure to prosecute. (Attachment "4")". Id. at pg.#8, Gov'n. Opp.

. . .What the government failed to tell this most Honorable Court in relation to his appeal being dismissed for failure to prosecute was one very important fact, which is simply that this is the first time he has learned that his case was ruled on. As it turns out Bethea's appeal had been held in abeyance for almost two years.

Furthermore, the clerk never felt inclined to serve Bethea with Notice of the Order from the Court of Appeals which stated that Bethea had thirty days in which to file a motion to show cause "why a certificate of appealability should not be denied".

Bethea was in custody at the time of the Circuit's Order and thus, should been given an opportunity to litigate his case. However, petitioner is in the process of filing a series of motions in an effort to save his appeal.

Moreover, these events as well have nothing to do with the 4 questions asked by the petitioners.   The government's assertions and deversionary tactics have no bearing what so ever, on the questions put before this most Honorable Court.

OPPOSITION TO THE GOVERNMENT'S
CLAIM OF SWEET'S LACK OF PERSONAL
<u>JURISDICTION</u>

When the class members initially filed their class action, they were all incarcerated in D.C. Jail. However, jurisdiction still exists simply because the class members are not requesting release, on the contrary, the class members simply would like an interpretation of D.C. Code, and thus, they request this most Honorable Court answer 4 questions of law, that deal directly with D.C. Code.

Jurisdiction exists as to all the class members. In support the class members rely on <u>Tel-Oren v. Libyan Arab Republic</u>, 233 U.S. App. D.C. 384 (1984), in which this Circuit stated; "In 1875 Congress gave the Federal Courts jurisdiction over federal questions." Id. at Mar. 3, 1875, ch. 137, z 1, 18 stat. 470.

Furthermore, In <u>U.S. v. Guiteau</u>, 1 Mackey 563 (U.S. App. 1882), the Supreme Court of the District of Columbia held; "A question was raised as to the jurisdiction of the court." . . ."When any offense . . .begun in one judicial Circuit and completed in another, it shall be deemed to have been committed in either, and may be delt with, in either district, inquired of. . .or determined." Id. at <u>Guiteau</u> Supra.

The United States Constitution, Art. III, Judicial Power, Cl. 1, states; "The Judicial power shall <u>1/</u> extend to all cases, between citizens of different states, of the same state, or, citizens or subjects." Id. at U.S. Constitution.

In <u>Meyer v. Federal Bureau of Prisons</u>, 940 F.Supp. 9 (D.D.C. 1996), the Honorable Charles Richey held; "The plaintiff (petitioner) must show that the claim that is the subject matter of the defendant's (FBOP) transacting such business in the District of Columbia, and the Court's excercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice."Id. at 12.

The court in <u>Mayer</u>, goes futher and states; "The District of Columbia's Long-arm statute, D.C. Code Ann. § 13-423, is the only basis upon which personal jurisdiction may be obtained over defendant who do not reside within or maintain a principal place of business in the District of Columbia." Id. at 12

Therefore, the this most Honorable Court does have jurisdiction to preside over this case. The government is well aware of the fact that this most Honorable Court is aware of the fact that the FBOP does business, and, is located in the District of Columbia.

This most Honorable Court is also aware of the fact that the FBOP is in a unique position more than any other governmental agency that does business in the District of Columbia simply because its arm extends across this Country when delegating rules, policies, and regulations that come out of the Central Offices located not far from this most Honorable Court. . . .Another reason for advancing the class members argument to support this most Honorable Court's jurisdiction is the fact that the questions asked by the class members deal specifically with D.C. Code. However, because each class member is in a different location, If they are forced to file in separate courts, there is a more than likely chance of each class member getting a different ruling, result or outcome in the interpretation of D.C. Code.

Thus, the class members request this most Honorable Court use the District of Columbia's "Long-Arm" statute pursuant to D.C. Code § 13-423. (See also Jacobsen v. Oliver, 201 F.Supp.2d 93 (D.D.C. 2002)), to cover any and all jurisdiction hurdles. Moreover, it is well within this most Honorable Court's authority to proceed in the aforementioned manner.

Class member Sweet only requests this most Honorable Court answer the 4 questions asked and presented to this most Honorable Court in its initial filing.

Furthermore, Sweet is a D.C. resident and will be released on parole soon. The class members want to be perfectly clear, **they are not seeking release from custody,** they simply would like to have clarity on what this Most Honorable Court and the government have to say with respect to the 4 questions asked by the class members. The class members contend as always that the D.C. Department of Corrections, as well as, the FBOP, has applied the laws of the District of Columbia in a erroneous manner.

OPPOSITION TO THE GOVERNMENT'S ASSERTION<br>THAT MACK AND HARDY'S CLAIMS SHOULD BE<br>DISMISSED AS MOOT BECAUSE THEY WERE<br><u>RELEASED FROM CUSTODY</u>

The government is well aware that class members Mack and Hardy cannot be dismissed as class members simply beacuse they were released. In support, the class members rely on D.C. Code § 24-204 (a)(1996 Repl.), and the D.C. Court of Appeal's jurisprudence in <u>U.S.P.C. v. Noble</u>, 693 A.2d 1084 (D.C. App. 1997), where the Court clearly established that, "parole was legal custody . . ."until the expiration of the sentence." Id. at page #1089-90.

Moreover, class member Bethea filed a writ habeas corpus while on parole as well,(See 04-CV-2269), and the government nor the court objected. Thus, the government's argument must fail. On page 13 of the government's opposition, they state that, "petitioner's ultimate objective in bringing their habeas action was to obtain reparole," which is the furthest thing from the truth simply because are serving set-offs, or parole hits. Mack and hardy simply would like the 4 questions answered by this most Honorable Court.

## OPPOSITION TO THE GOVERNMENT'S OPPOSITION THAT THIS CASE NOT BE CERTIFIED AS A CLASS ACTION

On August 13th, 2007, the class members filed a motion to the Court, "requesting a ruling on petitioner's motion to be certified as a class, and motion for appointment of counsel."

In the aforementioned motion, (which was also sent to the opposition), the class members spelled out their position as to why this case should be certified as a class. In support of the class member's position they relied on LoBue v. Christpher, 82 F.3d 1081 (D.C. Cir. 1996), where the circuit discussed the issue at bar when it overruled Mr.Lobue's contention that, "in a habeas corpus case he could not have maintained a class action . . .nor sought class wide relief in those proceedings." Id. at 1085., In LoBue, this Circuit responded by stating that, "If by that he(LoBue) meant to claim that there is no equivalent to class actions in habeas, he was wrong, for the courts have in fact developed such equivalents." (Citing United States ex rel. Sero v. Preiser, 506 F.2d 1115, 1125 (2nd Cir. 1974), Cert. denied 421 U.S. 921 (1975)). Its ironic that the government choose not to look at this circuits view on the matter of class certification, However, "elementary legal research would have revealed," (citing Davis v. Moore, 772 A.2d 204 (D.C. App. 2001), that the class members do fall squarely under this circuits jurisprudence as it relates to being certified as a class action. (see attached Motion that was sent to the government on August 13, 2007).

Wherefore, these reasons stated in the aforementioned the class members pray this most Honorable Court deny the government's motion's to dismiss, and anything else this most Honorable Court deems fair, just, and proper.

Respectfully Submitted,

*/s/ Terence K. Bethea*
Terence K. Bethea.,
Lead petitioner on behalf
of the class.

CERTIFICATE OF SERVICE

I hereby certify and declare that a true and accurate copy of the foregoing motion in opposition was placed into this institution's mail receptacle on this 27th day of September, 2007, to make service on the U.S. Attorney's office for the District of Columbia, 555 - 4th Street, N.W., Washington, D.C. 20530

*/s/ Terence K. Bethea*
Terence K. Bethea
Fed.Reg.#09978-007
F.C.I. - Gilmer
P.O.Box-6000
Glenville, WV 26351